IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | | |
|---|---|---|
| David Dwight Smith, | ) | |
| | ) | Civil Action No. 6:05-2286-GRA-WMC |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT OF MAGISTRATE JUDGE** |
| | ) | |
| Warden of USP-Atlanta; NFN Gray, | ) | |
| Sergeant at USP-Atlanta; D. T. Adams, | ) | |
| Officer at USP-Atlanta, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

This matter is before the court on the defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6) or, in the alternative, for summary judgment pursuant to Rule 56. In his complaint, the plaintiff, who is proceeding *pro se*, alleges civil rights violations while he was held at the United States Penitentiary ("USP") in Atlanta, Georgia.[1]

The plaintiff filed his complaint on August 29, 2005, pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). On December 7, 2005, the defendants filed a motion to dismiss or, in the alternative, for summary judgment. By order filed December 8, 2005, pursuant to *Roseboro v. Garrison*, 528 F.2d 309

---

[1]The plaintiff is now an inmate at McCormick Correctional Institution.

(4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion.  The plaintiff filed his response to the defendants' motion on January 17, 2006.

## FACTS PRESENTED

During the time at issue in the complaint, the plaintiff was a Cooperative Move United States Marshals Service inmate.  He was housed at the USP Atlanta while he was en route from the State of Texas to South Carolina.  According to the plaintiff's complaint, he was in the USP Atlanta for at most two weeks[2] (comp. ¶¶ 1-2).

The plaintiff named as a defendant Gerardo Maldonado, Jr., who is currently employed as the Regional Director for the South Central Region of the BOP in Dallas, Texas. At the time of the events alleged in the complaint, defendant Maldonado was the Warden at USP Atlanta.  The plaintiff also named as defendants Donald T. Adams and Victor Gray, both of whom are Senior Officers at USP Atlanta.  The plaintiff alleged in the complaint that he was "not given proper medical care" in that it took him four to five days to receive his medications. He also complained that the water in his cell did not work for almost two weeks.  He claimed that for several days he was not allowed out of the cell for a shower, phone call, to visit the library, or to see his counselor.  Lastly, the plaintiff alleged that defendant Gray threw out his extra blanket, for which the plaintiff claimed he had a medical pass, along with his sheets and several pieces of clothing  (comp. ¶ 1).

In support of their motion for summary judgment, the defendants submitted the declarations of Maldonado, Adams, Gray, and Clinton Stroble, the Assistant Regional Counsel in the Southeast Regional Office of the BOP.  Stroble testified that the plaintiff did not file an administrative grievance while at USP Atlanta (def. m.s.j., ex. 5).

---

[2]The plaintiff claims he arrived at USP Atlanta on May 30, 2005, and he was sent to the Spartanburg County Detention Center or about June 16, 2005 (comp. ¶¶ 1-2).

## APPLICABLE LAW AND ANALYSIS

The defendants have moved for dismissal of this action pursuant to Federal Rule of Civil Procedure 12(b)(1), for lack of jurisdiction over the subject matter, and 12(b)(6), for failure to state a claim upon which relief can be granted.  As matters outside the pleadings have been presented by the defendants and have not been excluded by this court, the motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) shall be treated as one for summary judgment pursuant to Rule 56.  *See* Fed.R.Civ.P. 12(b)(6).

Rule 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law.  As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party.  *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts

3

exist which give rise to a genuine issue.  *Id.* at 324.  Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion.  *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

The defendants first argue that this court lacks subject matter jurisdiction over the plaintiff's claims against the individual defendants in their official capacities.  This court agrees. Section 1983 allows a civil action to recover damages for deprivation of a constitutionally protected right.  *Bivens,* 403 U.S. at 395-96.  However, a suit against a federal agency or federal officer in his or her official capacity is actually a claim against the United States.  *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71 (1989).  Such a suit lies only where the United States has waived sovereign immunity.  *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994).  The United States has not waived its sovereign immunity for constitutional misconduct.  *See id.* at 477-78.  Accordingly, the doctrine of sovereign immunity shields the United States from suit absent its consent to be sued.  Therefore, this court lacks jurisdiction over the plaintiff's claims against the individual defendants in their official capacities, and those claims should be dismissed.

The defendants next contend that the complaint should be dismissed because the plaintiff has failed to exhaust his administrative remedies.  This court agrees.  Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought

4

with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a).  As the Supreme Court has observed:

> Beyond doubt, Congress enacted §1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Porter v. Nussle*, 534 U.S. 516, 524-25 (2002) (citations and quotations omitted).

The BOP has a three-tiered administrative grievance process.  28 C.F.R. §§542.10, *et seq*.  In the case at hand, it is undisputed that the plaintiff's Section 1983 claim is an action "with respect to prison conditions" under §1997e(a).  Clinton Stroble, the Assistant Regional Counsel in the Southeast Regional Office of the BOP, submitted a declaration in which he stated that he had reviewed the record entries maintained by the BOP and the plaintiff filed no administrative grievance while at USP Atlanta (def. m.s.j., ex. 5).  Accordingly, the plaintiff has failed to exhaust his administrative remedies, and his claims should be dismissed.

Even if the plaintiff had exhausted his remedies, his claims should be dismissed because they are without merit.  The plaintiff first alleges that the defendants were deliberately indifferent to his serious medical needs.  Specifically, he claims that it took four or five days for him to get his medications.  The plaintiff's medical records show that the plaintiff was seen by the medical staff at BOP Atlanta on June 2, 2005, and at that time he was prescribed Lisinopril, Metopolol, Coumadin, and a topical cream (def. m.s.j., ex. 6).

5

"The Fourteenth Amendment right of pretrial detainees, like the Eighth Amendment right of convicted prisoners, requires that government officials not be deliberately indifferent to any serious medical needs of the detainee." *Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir. 1990) (citing *Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir. 1988)).  The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble,* 429 U.S. 97, 102 (1976).  This obligation arises from an inmate's complete dependency upon prison medical staff to provide essential medical services.  *Id.*  The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105.  Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended.  *Id.* at 104.  As such, "an inadvertent failure to provide adequate medical care" will not comprise an Eighth Amendment breach.  *Id.* at 105-106.

In order to state a claim, "[a] plaintiff must satisfy two elements . . . : he must show a serious medical need and he must prove the defendant's purposeful indifference thereto." *Sires v. Berman*, 834 F.2d 9, 12 (1st Cir. 1987).  "A medical need is 'serious' if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gaudreault v. Municipality of Salem, Mass.,* 923 F.2d 203, 208 (1st Cir. 1990), *cert. denied,* 500 U.S. 956 (1991) (citing *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3rd Cir.1987)).  "It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Estelle*, 429 U.S. at 106. Mere negligence or malpractice does not violate the Eighth Amendment.  *Id.*  Moreover, disagreements between an inmate and a physician over the inmate's proper medical care do not state a Section 1983 claim unless exceptional circumstances are alleged.  *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

6

Even assuming that the plaintiff has shown that he had a serious medical need, he has failed to show that the defendants were deliberately indifferent to his need. He cannot and has not shown that the defendants were purposefully indifferent to his medical needs. While the plaintiff claims that it took "four or five days" to get his medications, he has failed to specify what medications were not received and from whom he requested the medications. The only evidence before the court is that the plaintiff received medications on June 2, 2005, just a couple of days after he arrived at USP Atlanta. Further, the plaintiff has not demonstrated that he suffered any injury or threat of a serious injury from the alleged refusal of medical attention. At most, the plaintiff alleges that the defendants were negligent in failing to provide him necessary medical care." Mere negligence or malpractice does not violate the Eighth Amendment. *Estelle*, 429 U.S. at 106. Accordingly, his claim fails.

The plaintiff also attempts to allege a violation of the prohibition against cruel and unusual punishment by claiming generally that he was "locked-up" excessively, the sink in his cell did not work, and one of the defendant officers took his clothes and extra blanket. Confinement conditions of pretrial detainees are to be evaluated under the Due Process Clause of the Fourteenth Amendment rather than under the Eighth Amendment. *Bell v. Wolfish,* 441 U.S. 520, 535 (1979). Where a pretrial detainee complains of prison conditions, the proper inquiry is whether the conditions of his confinement amount to punishment before a proper adjudication of guilt. *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992). Not every hardship suffered during pretrial detention amounts to "punishment" in the constitutional sense. *Id.* (citing *Bell,* 441 U.S. at 53). To succeed on a claim for cruel and unusual punishment, a prisoner must prove: (1) objectively, the deprivation of a basic human need was sufficiently serious, and (2) subjectively, the prison officials acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). "'[I]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement,

7

supplying medical needs, or restoring official control over a tumultuous cellblock.'" *Moore v. Winebrenner*, 927 F.2d 1312, 1316 (4th Cir. 1991) (quoting *Whitley v. Albers,* 475 U.S. 312, 319 (1986)).  The plaintiff has failed to show either element of a conditions of confinement claim. Based upon the foregoing, the claim fails.

Lastly, the plaintiff complains generally that he was denied access to a law library (comp. ¶ 2). The United States Constitution guarantees prisoners the right of meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817, 824, 828 (1977).  In *Bounds*, the Supreme Court held that the right of access imposes an affirmative duty on prison officials to assist inmates in preparing and filing legal papers, either by establishing an adequate law library or by providing adequate assistance from persons trained in the law.  *Id*. at 828.  Prison officials are not required to provide both, as long as access to either the library or the trained personnel is "meaningful."  *Id*. at 832.

In *Lewis v. Casey*, 518 U.S. 343, 349 (1996), the Supreme Court held that a prisoner must show some actual injury resulting from a denial of access in order to allege a constitutional violation.  In *Cruz v. Hauck*, 515 F.2d 322 (5th Cir. 1975), the court noted that "access to the courts may be satisfied either by availability of legal materials, by counsel, or by any other appropriate devise of the State."  *Id.* at 331.  Here, the plaintiff has not identified a specific problem he wished to research nor has he stated a specific injury resulting from his alleged denial of access to the courts.  Conclusory allegations, without more, are insufficient to preclude the granting of the summary judgment motion.  *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). Further, it appears that the plaintiff was housed at USP Atlanta for only two weeks.  Based upon the foregoing, the claim is meritless.

The defendants further claim that they are entitled to qualified immunity.  This court agrees.  Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly

established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This qualified immunity is lost if an official violates a constitutional or statutory right of the plaintiff that was clearly established at the time of the alleged violation so that an objectively reasonable official in the defendants' position would have known of it. *Id.*

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998).

In this case, as set forth above, the plaintiff has failed to demonstrate that the actions of the defendants violated any of his constitutional rights. Therefore, the defendants are entitled to qualified immunity on these claims.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that the defendants' motion for summary judgment be granted.

_____
WILLIAM M. CATOE
UNITED STATES MAGISTRATE JUDGE

April 27, 2006

Greenville, South Carolina

9